UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

JOHN W. MCCOMBS, JR.,　　　　　　　　　　　Case No.: 11-01293-MAM-11

　　Debtor.

**ORDER DENYING HERITGAGE FIRST BANK'S MOTION TO PROHIBIT USE OF CASH COLLATERAL**

　　Christopher Kern, Attorney for Heritage First Bank, Mobile, Alabama
　　A. Richard Maples, Jr., Attorney for the Debtor, Mobile, Alabama

This matter is before the Court pursuant to the motion of Heritage First Bank to prohibit the Debtor's use of cash collateral in the case of John W. McCombs Jr. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. For the following reasons, Heritage First Bank's motion is due to be DENIED.

## FACTS

On February 16, 2007, John W. McCombs Jr. ("Debtor") borrowed $1,233,000.00 from Heritage First Bank ("Heritage"). In conjunction with the loan, the Debtor executed a mortgage and promissory note in favor of Heritage, which, in part, granted Heritage a security interest in six rental properties located in Baldwin County, Alabama. The mortgage also contained a rider that purported to assign all rents accrued from the Baldwin County properties to Heritage. In its first paragraph, the rider states that it is "incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed…to secure Borrower's Note to

1

Heritage First Bank…." The assignment of rents clause, located in section H of the rider, states, in pertinent part, the following:

> Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default [pursuant to the mortgage], and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.
>
> If Lender gives notice of default to Borrower,: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant…
>
> ***
>
> Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

Jimmy Conyers Jr. ("Mr. Conyers"), Heritage's vice president and commercial loan officer, originated the Debtor's loan. He testified at trial that the mortgage and assignment of rents were recorded with the Baldwin County Probate Court. Mr. Conyers further testified that, at some point, the Debtor defaulted under the terms of the mortgage. Heritage notified the Debtor of the default by letter on March 29, 2011. In the letter, Heritage explained that, pursuant

to the assignment of rents clause, it contacted the tenants of the six rental properties and requested that all future rent payments be paid directly to Heritage. Mr. Conyers testified that any rents received by Heritage would be applied to reduce the Debtor's loan balance. In response to the request, Heritage received only one rental payment from a tenant, in the amount of $700.00.

The Debtor filed for Chapter 11 bankruptcy protection on March 31, 2011. In response to the filing, Heritage sent a second set of letters to the Debtor's tenants requesting that future rental payments be made to the Debtor or his attorney. Heritage also returned the $700.00 payment detailed above. Mr. Conyers testified that Heritage's action were due to the bankruptcy filing and pursuant to advice of legal counsel.

On April 1, 2011, the Debtor offered to pay Heritage $1,350.00 per month during the pendency of the case as adequate protection for its interests. Mr. Conyers testified that Heritage never responded to the Debtor's adequate protection offer because Heritage felt that the offered amount was too low. Mr. Conyers testified that Heritage received a $6,750.00 payment from the Debtor in August of 2011. $6,750.00 is the equivalent of five months of $1,350.00 payments, but Heritage never indicated that it accepted the payment as adequate protection.

The Debtor has managed and maintained the six rental properties since the filing of his bankruptcy case, including collection of rent. The Debtor testified that he has collected $14,300.00 in rent since the filing. Of that money, $6,750.00 went to pay Heritage and the remainder was used to maintain the properties. The Debtor testified that he has conducted repairs and paid various bills (waste, water, sewer, electric) since the inception of the case. Further, at least two of the properties are currently vacant, but require upkeep expenses. The Debtor

3

Case 11-01293    Doc 56    Filed 09/23/11    Entered 09/23/11 15:08:24    Desc Main
Document      Page 3 of 8

testified that he has not personally taken any management fees since the bankruptcy filing. Instead, he has secured other employment to support himself.

The Debtor testified that he has been in the business of managing rental properties in Orange Beach and Gulf Shores, Alabama for the last twenty years. At trial, he offered his opinion as to the current value of the six rental properties. He testified that the current loan balance owed to Heritage is $1,192,000.00 and that, in his opinion, the fair market value of the properties is $404,575.00. He explained that the properties were worth closer to the value of the indebtedness at the time the loan was made, but that recent events along Alabama's Gulf Coast, i.e., the B.P. oil spill, have severely depressed their value. The Debtor also testified that his valuations were lower than Heritage's most recent appraisals of the properties and that he expects values to decrease even further in the next six months.

On July 12, 2011, Heritage filed a motion to prohibit the Debtor's use of the rental proceeds. Heritage asserted that the collected rent was cash collateral and that the Debtor was using it without permission from this Court or Heritage. The Debtor responded by questioning the effectiveness of the assignment of rents clause. The Court conducted a trial on August 30, 2011. At trial, Heritage asserted that it was, and continues to be, entitled to 100% of the rental proceeds because the assignment of rents clause in the mortgage constituted an absolute assignment. The Debtor argued that the assignment of rents clause merely effectuated a security interest and that the Debtor provided, and was willing to provide additional, adequate protection to Heritage. The Court asked the parties to brief the issue and took this matter under advisement.

## LAW

The issue before the Court is whether the assignment of rents clause incorporated into the parties' loan agreement is an absolute assignment or a security interest in rents, i.e., a collateral

4

Case 11-01293    Doc 56    Filed 09/23/11    Entered 09/23/11 15:08:24    Desc Main
Document      Page 4 of 8

assignment.[1] The distinction is critical because a prepetition, absolute assignment of rents to Heritage strips the Debtor and the bankruptcy estate of any proprietary interest in those rents. *In re Turtle Creek, LTD.*, 194 B.R. 267, 278 (Bankr. N.D. Ala. 1996). The pivotal question is what interest, if any, the Debtor had in the rental income at the filing of his bankruptcy case. Courts look to state law to determine debtors' interests in property. *Butner v. United States*, 440 U.S. 48, 54-55 (1979). Under Alabama state law, the proper effect of an assignment of rents clause must be gleaned from the intent of the parties as exhibited in the language of the clause itself. *See Turtle Creek*, 194 B.R. at 278-79.

Few Alabama cases squarely address the distinction between an absolute assignment and a collateral assignment. However, Alabama's highest court considered the issue in the case of *Homecorp v. Secor Bank*, 659 So. 2d 15 (Ala. 1995). In *Homecorp*, the court was presented with an apartment complex mortgage containing an assignment of rents clause. The issue was whether the mortgagee was entitled to preforeclosure rental income from the apartment complex pursuant to the assignment of rents clause. The court affirmed the trial court's determination that the assignment of rents clause was an absolute assignment that became absolute, entitling the mortgagee to immediate possession of the rents, after notice was given of an uncured event of default. *Id*. at 20. The trial court found, and the Supreme Court agreed, that the following language sufficiently revealed the parties true intent that the rents be absolutely assigned and not merely serve as additional security:

> The assignment of the rents…of the Mortgaged Property in this Article II is intended to be an absolute assignment from the Mortgagor to the Mortgagee and not merely the passing of a

---

[1] If this Court were to find the assignment in question to be a security interest pursuant to 11 U.S.C. § 552(b), then it would be required to answer several additional questions in order to resolve this matter, i.e., whether Heritage properly perfected its security interest in postpetition rents, whether the Debtor was authorized to use the postpetition rents, and whether the Debtor provided adequate protection to Heritage. *See* 11 U.S.C. §§ 363, 361. However, because the Court finds that the rental proceeds were absolutely assigned to Heritage prepetition, the Court does not reach those issues.

5

>    security interest. The rents…are hereby assigned absolutely by
>    Mortgagor to Mortgagee contingent only upon the occurrence of
>    an uncured event of default under any of the Loan Instruments.

*Id*. at 18-20.

In *In re Turtle Creek, LTD*, 194 B.R. 267 (Bankr. N.D. Ala. 1996) the bankruptcy court applied Alabama law to distinguish a collateral assignment from an absolute assignment of rents. In doing so, the bankruptcy court compared the language of the assignment of rents clause in *Homecorp* to the one before the bankruptcy court in *Turtle Creek* stating the following:

>    The mortgage in *Homecorp* specifically provided that the assignment of rent was intended to be an absolute assignment from the Mortgagor to the Mortgagee and not merely the passing of a security interest.
>
>    The mortgage in the instant case contains no such language. Indeed, a close reading of the mortgage indicates that the assignment of rents was intended only as security for the debt. Paragraph one of the mortgage provides that it was given for the purpose of securing the prompt payment of the indebtedness ... Further, the assignment of rents provision specifically provided that the assignment was given for the purpose of discharging the debt hereby secured. Thus, the Court finds that the instant assignment of rents clause is distinguishable from *HomeCorp* in that it was not intended as an absolute assignment of rents, but merely a collateral assignment to secure the mortgages.

*Id.* at 278-79 (internal citations and quotations omitted).

In this case, the assignment of rents clause effectuated an absolute assignment of rents rather than a collateral assignment. This conclusion is based on the parties' intent as revealed by the assignment language. The assignment language here mirrors the language in the assignment of rents clause in *Homecorp*. In particular, the phrase "This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only" speaks specifically to the intention of the parties. The *Homecorp* court found very similar language to be dispositive of the parties' intent and held accordingly. Therefore, based upon this Court's duty to follow

6

Alabama law as to the extent of the Debtor's interest in property, this Court finds that the assignment of rents between the Debtor and Heritage was absolute.

Further, a direct result of this holding is that the rental proceeds from the Debtor's rental properties are not property of the bankruptcy estate. Under the terms of the assignment of rents clause, Heritage was entitled to the rents from the day the assignment was executed. Therefore, the Debtor retained no proprietary interest in the rents that would have passed to the bankruptcy estate, pursuant to 11 U.S.C. § 541, on the day the Debtor filed his petition. This result is not altered by the fact that the Debtor was allowed, pursuant to the assignment of rents clause, to collect the rents. The terms of the clause merely gave the Debtor the right to collect rents on behalf of Heritage so long as the Debtor acted in line with the terms of the mortgage. However, once a default occurred and was communicated to the Debtor by Heritage, Heritage had the right to instruct the Debtor's tenants to deliver the rents directly to it, or its agent, going forward.

The Court is mindful of the growing number of cases from other jurisdictions analyzing this question somewhat differently. *See e.g. In re Buttermilk Towne Center, LLC*, 442 B.R. 558 (B.A.P. 6th Cir. 2010) (detailing cases from various jurisdictions addressing the issue). In determining whether an assignment of rents was absolute or collateral, those courts considered the substance of the clause as a whole to give effect to the parties' intent, rather than taking isolated statements as dispositive. As stated by the *Buttermilk* court:

> While isolated portions of the assignment may appear absolute, when read in the context of the entire document, it is clear that the assignment was intended to serve as additional security only.

*Id*. at 564. Under that line of reasoning, for example, the fact that a so-called absolute assignment terminates upon the extinguishment of the underlying debt weighs against patent statements of the parties' intent that conflict with the true nature of the assignment as a security interest. *See In re McCann*, 140 B.R. 926, 927 (Bankr. D. Mass. 1992). To the Court, this result

7

is truer to the true intent of these documents. However, Alabama law dictates the result in this case and this Court is bound to follow state law on issues of state law about what constitutes property of a bankruptcy estate.

Therefore, it is ORDERED that:

1. Heritage First Bank's Motion to Prohibit Use Cash Collateral is DENIED because the Court finds that there is no cash collateral.

Dated:   September 23, 2011

*Margaret A. Mahoney*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE