UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

JOHN W. MCCOMBS, JR.,                               Case No.: 11-01293-MAM-11

    Debtor.

**ORDER GRANTING HERITGAGE FIRST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

    Christopher Kern, Attorney for Heritage First Bank, Mobile, Alabama
    A. Richard Maples, Jr., Attorney for the Debtor, Mobile, Alabama

This matter is before the Court pursuant to Heritage First Bank's Motion for Relief from the Automatic Stay. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. Heritage First Bank's motion is due to be GRANTED.

**FACTS**

The Debtor currently owns and operates six rental properties located in Baldwin County, Alabama (the "properties"). Movant Heritage First Bank ("Heritage") possesses a security interest in the properties by virtue of a $1,233,000 mortgage loan executed on February 16, 2007. The mortgage agreement included an assignment of rents clause and a monthly mortgage payment of $9,596. The assignment of rents clause included form language from a Fannie Mae rider that the parties utilized in the loan transaction. In late 2010, the Debtor ran into financial difficulties and was unable to make his payments to Heritage pursuant to the note and mortgage. His last mortgage payment to Heritage was made in October of 2010. The Debtor filed for

1

Chapter 11 bankruptcy relief on March 31, 2011. The payoff amount of the mortgage debt owed to Heritage on the date of filing was $1,235,619.55. As of November 1, 2011, the balance of the debt and the principal value of the loan were $1,281,762.92 and $1,189,230.62, respectively.

On September 23, 2011, this Court ruled that, pursuant to Alabama law, the rental income produced by the properties was assigned absolutely to Heritage in conjunction with the mortgage agreement. *In re McCombs*, 2011 WL 4458893 (Bankr.S.D.Ala. 2011).[1] Consequently, the rents generated by the properties are not part of the Debtor's bankruptcy estate. Since entry of the order, Heritage has received all collected rental income from the properties. Prior to the ruling, the Debtor collected the rents and used them to pay taxes, maintenances, and utility costs associated with the properties, and paid any excess over to Heritage.

On October 7, 2011, Heritage moved to lift the automatic stay as to the properties. Heritage argued that the Debtor had no equity in the properties, the properties were not necessary for an effective reorganization, and that it was not adequately protected from the declining value of the properties. Further, Heritage asserted that the Debtor was responsible for $86,364 (nine months at $9,596 per month) in total post-petition arrearage. The Debtor argued that the automatic stay should remain in effect because Heritage was adequately protected and the properties were necessary for an effective reorganization. A hearing was held on the motion for relief from stay on November 1, 2011. The court indicated that it believed evidence of the value of the income stream from the rents might be a necessary piece of evidence. The value of the income stream might adequately protect the lender if the rents were not considered as a completely separate piece of collateral for Heritage. Therefore, the hearing was adjourned to obtain this testimony and the hearing was concluded on November 29, 2011.

---

[1] The facts in that opinion, where pertinent, are incorporated here by reference.

2

At the hearings, the parties disagreed as to whether the rents could be used as adequate protection. Since the filing of his bankruptcy case, the Debtor has paid $14,550 in rental income to Heritage. Heritage has applied those payments to the Debtor's loan. The Debtor insists that the payments were meant as, and are sufficient to qualify as, adequate protection. The Debtor also suggested that his management and maintenance services, which he has performed for free since the filing of the bankruptcy case, served as additional adequate protection. Heritage countered that it never accepted any money from the Debtor as adequate protection; rather, Heritage asserted that it merely accepted rental income to which it was lawfully entitled. Heritage argues that rents, which were absolutely assigned to it pre-petition, could not be used as adequate protection for the properties. Heritage also asserts that it is not adequately protected because the value of the properties has consistently declined since the filing of the Debtor's bankruptcy case, particularly in relation to the value of the debt.

Both parties presented valuation evidence regarding the properties. Heritage offered evidence of appraisals from February of 2011, a month prior to the bankruptcy filing, valuing the properties at $525,000. Heritage called Mike Reibling,[2] an accountant certified to conduct property valuations, to testify regarding the value of the properties. Mr. Reibling valued the properties by including their rental income streams. He explained that it was unusual and duplicative to value the income stream from a rental property separate from the underlying property. He stated that he used the "income approach" in calculating his assessments. He prepared a report that concluded that the properties were worth between $235,360 and $304,917, depending on what discount rate was applied. Mr. Reibling used discount rates ranging from 15.5% to 19.5%. He concluded that $283,931 was the most reasonable assessment of the

---

[2] The parties stipulated to the qualifications of the experts Mike Reibling and John Seibert to provide testimony and reports.

3

properties' aggregate value. Mr. Reibling relied upon a report prepared by the Debtor, which attested to the rental income from the properties, in formulating his conclusions.

The Debtor valued the properties at $404,575 in his bankruptcy schedules. He testified in that the properties would likely continue to decline in value due to the current economic climate. The Debtor offered a competing expert, John H. Seibert, on November 29, 2011 to attest to value. Mr. Seibert is a CPA and has significant experience with property valuations. In contrast to Mr. Reibling, Mr. Seibert valued the income stream from the rents separate from the value of the properties. He testified that the value of the properties' income stream ranged from $103,000 using a 4% discount rate to 92,000 using an 8% discount rate. He explained that the discount rates reflect different levels of risk, and that 2%, which is the rate used with government bonds, is considered a safe rate. Mr. Seibert conceded that valuing the income stream independent of the underlying property is atypical because the value of a rental property implicitly includes the value of the income stream. Ultimately, the parties agreed that Heritage was undersecured regardless of which valuation was used, and therefore, that the Debtor had no equity in the properties. The experts both came to the conclusion that the separation of the rental income of a property from the value of the underlying real estate created significant valuation difficulties. It simply could not be done because the income stream was an integral part of the income approach to valuation of the property.

As stated above, the debt owed to Heritage Bank is over $1,100,000. The value of the property and rents is, at best, $300,000. According to the expert testimony, the value of the real estate has declined significantly since filing, by as much as $100,000 or more. The rents from the properties have averaged less than $10,000 per month. The Debtor is currently performing some outside consulting work for supplemental income, but explained that without the assistance

4

of the rents, he would not be able to provide the necessary upkeep on the properties. To date, the Debtor has not proposed a Chapter 11 plan.

## LAW

Heritage asks this Court to lift the automatic stay so that it may utilize all available state court remedies. The Debtor opposes Heritage's motion by asserting that the properties are necessary for an effective reorganization and that adequate protection is available for Heritage. 11 U.S.C. § 362(d) provides secured creditors two avenues for relief from the automatic stay. Section 362(d)(1) states that the automatic stay shall be lifted if the court finds cause, including lack of adequate protection. Section 362(d)(2) mandates relief from the automatic stay where: (1) the debtor does not have equity in the property and (2) the property is not necessary for an effective reorganization. Notably, § 362(d)(2) is stated in the conjunctive, and thus, both requirements must be met. As the movant, Heritage bears the burden of proof to demonstrate that the Debtor has no equity in the properties; the Debtor shoulders the burden as to all other issues. 11 U.S.C. § 362(g). The parties' respective burdens must be satisfied by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S 279, 287 (1991). Section 362(d)(1) and (d)(2) will be discussed independently.

## 362(d)(1)

Section 362(d)(1) requires relief from the automatic, upon request of a party in interest, for cause, including lack of adequate protection. Heritage asserts that its interest in the properties is not adequately protected against declining value. The Bankruptcy Code does not specifically define adequate protection, however, 11 U.S.C. § 361 details three non-exhaustive categories of adequate protection: (1) periodic cash payments to offset a decline in value; (2) an additional or replacement lien; and (3) an indubitable equivalent of an entity's interest in the otherwise

5

unprotected property. An equity cushion is a frequently cited form of adequate protection. *In re Mathews*, 208 B.R. 506, 510-11 (Bankr. N.D. Ala. 1997).

It is clear to the Court that the value of the properties has consistently decreased since early 2011. According to Heritage's appraisals, the property was worth $525,000 in February of 2011. One month later, the Debtor valued the properties at $404,575 in his bankruptcy schedules. He testified that, in his opinion, the properties would continue to decline in value. In accordance with the Debtor's prediction, Mike Reibling determined that $283,931 was the best estimate of the current value of the properties, including their rental income streams. Therefore, Heritage stated a prima facie case of lack of adequate protection by establishing that the value of the collateral is declining during the case. *In re George*, 315 B.R. 624, 628 (Bankr. S.D. Ga. 2004).

The Debtor maintains that he has paid Heritage $14,550 in rent since the filing of his bankruptcy case and that those payments constitute adequate protection. He also proposes to provide additional adequate protection in the form of free property management services and a periodic accounting with regard to the payment of insurance, utilities, and expenses. Implicit in the Debtor's assertion and proposals is that the rental income from the properties can be used for adequate protection payments. The Debtor's contention is complicated by the fact that this Court previously ruled that, pursuant to Alabama law, the rents were absolutely assigned to Heritage pre-petition. Heritage states that the rents cannot be used as adequate protection for its separate security interest in the properties. Rather, Heritage asserts that, by virtue of this Court's order, the rent is a separate interest that warrants protection of its own. *See In re River Oaks, Ltd.*, 166 B.R. 94, 99 (E.D. Mich. 1994) (explaining that a security interest in rents and a separate security interest in mortgaged property require individualized adequate protection). Further, Heritage

6

asserts that even if the rental income could be used as adequate protection, it is insufficient to outpace the declining value of the property or even equal the monthly mortgage payments.

The Debtor responds that even though the rental income was absolutely assigned, it can still serve as adequate protection. In support, the Debtor cites *In re Constable Plaza Associates, L.P.*, 125 B.R. 98, 102 (Bankr. S.D.N.Y. 1991) for the proposition that "[e]ven if [a creditor] had an absolute assignment, rather than a pledge which required further action, it would not follow that the debtor's interest in the rent was totally cut off." The applicability of the *Constable Plaza* decision is limited when applied to the instant situation because it did not involve an absolute assignment; rather the bankruptcy court in that case found that the assigned rents were additional security for the underlying loan. However, *Constable Plaza* relies on *Equitable Mortgage Co. v. Fishman*, 641 F.2d 737 (9th Cir. 1974), a case that did involve an absolute assignment. *Fishman* held that, under Nevada law, a debtor retains a residual interest in absolutely assigned rents. As stated by the 9th Circuit:

> The assignment here is "absolute" in the sense that it was effective upon default without further action by the creditor. Pending foreclosure the mortgagee-creditor was entitled to collect and hold the rents as against the trustee without any action other than notice of the default and demand for the rents. "Absolute" does not mean, however, that the assignee is relieved of all obligation to account or that the right to the rents is independent of the underlying debt. Upon foreclosure, the creditor, of course, must account for any excess derived from the sale and rents collected between the date of default and the date of foreclosure sale over and above the amount of the obligation owed.
>
> In the instant case there was no deficiency after the sale. In other words, the bankrupt's obligations to [the creditors] had been fully paid. Accordingly, appellants have no claim to the rents.

*Id*. at 740; *see also Travelers Indemnity Co. v. Grant Associates*, 1991 WL 21228 (S.D.N.Y. February 5, 1991). However, the reasoning in *Fishman* is inapplicable to the case at bar for several reasons. First, it applies Nevada law. The Court has located no Alabama cases finding a

7

residual interest in absolutely assigned rents. Second, *Fishman* involved a foreclosure sale of the underlying property and the applicability of assigned rents to the outstanding debt. Here, no sale has occurred and Heritage is currently applying received rents against the current debt. Further, in *Fishman* the creditor sought past due rents even though a foreclosure sale had satisfied its entire loan obligation. In this case, the rental proceeds are already being turned over to Heritage and the value of the outstanding debt owed to Heritage far exceeds the declining value of the properties, leaving very little chance that any amount of rent will be collected beyond the amount of the outstanding debt.

However, this issue highlights the problem with absolute assignments of rents. Although the court has ruled that the assignment held by Heritage is absolute in recognition of state court law in Alabama that so states,[3] interpreting language identical to the language in Heritage Bank's assignment, the court believes that, if reviewed again, by another state court, the result might be different. Why? Because the manner in which an assignment of rents works shows that it is really a security device for the underlying loan. Any payments of a mortgagor that are the result of rent collection are applied to the note. Any rents collected by the mortgagee pursuant to the assignment are applied to the note. The assignment is not a separate asset with a separate note. The value of the property and the assignment are bound together in the property and its rents. When the note is paid off, the assignment is released. It has no ongoing life or value. Therefore, the assignment, regardless of the word "absolute", acts as a security interest, not as a real transfer of title. *See, e.g, In re Buttermilk Towne Center, LLC*, 442 B.R. 558 (B.A.P. 6th Cir. 2010).

However, the court need not reach this issue in this case. Even if the rental income had not been absolutely assigned, its value alone would be insufficient to adequately protect

---

[3] *McCombs*, 2011 WL 4458893, at *3-*4.

Heritage's interest. The evidence of value shows that the value is dropping faster than the average monthly rents can protect. Therefore, relief from the stay is proper under 11 U.S.C. § 362(d)(1).

### 362(d)(2)

In order to warrant relief from the automatic stay pursuant to § 362(d)(2), the Court must be satisfied that (1) the Debtor has no equity in the properties and (2) the properties are not necessary for an effective reorganization.

"Equity ... is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Matter of Holly's, Inc.*, 140 B.R. 643, 697-98 (Bankr. W.D. Mich. 1992). The Debtor's lack of equity is undisputed. The value of the properties is significantly less than the value of the outstanding debt. The Debtor does not controvert his lack of equity. Therefore, relief from the automatic stay pursuant to § 362(d)(2) hinges on whether the properties are necessary for an effective reorganization. The Debtor bears the burden of proof as to that element. 11 U.S.C. § 362(g).

For property to be necessary for an effective reorganization there must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Savings Association v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376–77 (1988); *In re Equitable Development Corp.*, 196 B.R. 889, 891 (Bankr. S.D. Ala. 1996). It is not enough for a Debtor to show that his very survival depends on the property at issue; he must show that his prospects for an effective reorganization are reasonably possible. *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 n.7 (11th Cir. 1984). The Debtor's burden to demonstrate his prospects for an effective reorganization is on a "sliding scale" where "the burden enlarges as the bankruptcy case progresses." *Holly's*, 140 B.R. at 699-700. "Therefore, if the relief from stay is requested at the

9

Case 11-01293    Doc 98    Filed 12/21/11    Entered 12/21/11 15:24:25    Desc Main
Document      Page 9 of 10

early stages of the bankruptcy case, the burden upon the debtor is less stringent." *Id.* at 700. Still, the Court must keep in mind the "reasonableness of delay imposed upon a creditor while the debtor is progressing toward plan confirmation." *Id*.

The Debtor asserts that the properties are necessary for an effective reorganization. The Court agrees. From the Debtor's schedules and the circumstances of this case, it is clear to the Court that without the properties, an effective reorganization cannot be achieved. The properties' value, even without the rental income, represents the majority of the Debtor's assets. Without speaking to confirmation issues directly, the Debtor could propose a plan that would transfer or liquidate the properties to effectuate a successful reorganization; the Debtor also might be able to raise the rental income in some manner. The Debtor has not proposed a plan yet, but the Debtor must have sufficient time to formulate a workable plan of reorganization. *Holly's*, 140 B.R. at 700. The ultimate disposition of this motion, as with the prior motion to prohibit use of cash collateral, directly impacts the Debtor's ability to propose a plan. Therefore, any delay appears justifiable, particularly when considering the less stringent burden of proof this early in the case.

The Court finds that the properties are necessary for an effective reorganization and denies Heritage's motion for relief from the automatic stay pursuant to § 362(d)(2).

THEREFORE IT IS ORDERED

1. Heritage Bank's motion for relief from stay with regard to the six properties at issue is GRANTED pursuant to 11 U.S.C. § 362(d)(1).

Dated: December 21, 2011

*Margaret A. Mahoney*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE